UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FRIENDS OF THE COLUMBIA GORGE,
INC., an Oregon non-profit corporation,

        Plaintiff,

   v.

UNITED STATES FOREST SERVICE, an
agency of the United States Department of
Agriculture,

        Defendant.

AMENDED ORDER

Civil No. 04-1332-ST

HAGGERTY, Chief Judge:

     Magistrate Judge Stewart referred to this court a Findings and Recommendations (F&R) [74] in this matter. The F&R recommends granting plaintiff's Motion for Summary Judgment [44], denying defendant's Motion for Summary Judgment [56], and enjoining any work on the road at issue. Defendant United States Forest Service (USFS) and plaintiff Friends of the Columbia River Gorge, Inc. (Friends) both filed timely objections and responses.

1 - ORDER

When a party objects to any portion of an F&R, the district court must conduct a de novo review. 28 U.S.C. § 636(b)(1)(B); *McDonnell Douglas Corp. v. Commodore Bus. Mach. Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). The history of this matter, as laid out in Judge Stewart's comprehensive F&R, is not in dispute, and is not repeated here.[1]

**I.    USFS Objections**

    **A.    Applicability of the Administrative Procedure Act (APA)**

USFS argues that the APA does not apply because the issuance of the quitclaim deed to Sirrah Corporation and the Harris Family Trust (Sirrah), an action affecting common law property rights, does not confer federal jurisdiction. *See, e.g.*, *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1174 (9th Cir. 2007) ("[The APA] is a procedural statute that requires another relevant statute to form the legal basis for the complaint that the government has acted unlawfully."). However, USFS fails to acknowledge that Friends' claims are made under the National Environmental Policy Act (NEPA) and the Columbia River Gorge National Scenic Act (Scenic Area Act). The analysis of common law property rights was necessary only because of the affirmative defense that the quitclaim deed merely maintained the status quo under NEPA.

    **B.    Standard of Review**

USFS argues that the standard of review applied should have been the arbitrary and capricious standard rather than the reasonableness standard. When choosing which standard to apply in evaluating agency action, courts are to "distinguish the strong level of deference [they] accord agency in deciding factual or technical matters from that to be accorded in disputes

---

[1] Some of the arguments made by the parties are raised for the first time in objections to the F&R. The court exercises its discretion to consider those arguments. *See United States v. Howell*, 231 F.3d 615, 621-23 (9th Cir. 2000).

involving predominantly legal questions." *Northcoast Envtl. Ctr. v. Glickman*, 136 F.3d 660, 667 (9th Cir. 1998) (quoting *Alaska Wilderness Recreation & Tourism v. Morrison*, 67 F.3d 723, 727 (9th Cir. 1995)). Here, the facts are not in dispute, and the questions presented are legal ones as to the threshold issue of NEPA's applicability. Thus, the less deferential reasonableness standard applies.

C.    **Ministerial Act**

USFS claims that issuance of the quitclaim deed to Sirrah was a ministerial act, and was thus exempt from the requirements of NEPA. It raises several theories under which it claims the issuance was ministerial: (1) boundary acquiescence; (2) the rule of reason; (3) the Alaska National Interest Lands Conservation Act (ANILCA); and (4) to do otherwise would be to engage in a taking.

The doctrine of boundary line acquiescence "establishe[s] that if adjoining property owners occupy their respective holdings to a certain line for a long period of time, they are precluded from claiming that the line is not the true one . . . ." *Lamm v. McTighe*, 434 P.2d 565, 592 (Wash. 1967). For this doctrine to apply, "[t]he line must be certain, well defined, and in some fashion physically designated upon the ground . . . [and there must be] mutual recognition and acceptance of the designated line as the true boundary line . . . for that period of time required to secure property by adverse possession." *Id.* at 593. This showing must be made "by clear, cogent and convincing evidence" of each element. *Lilly v. Lynch*, 945 P.2d 727, 733 (Wash. Ct. App. 1997). As explained in the F&R, the record here does not satisfy *Lamm*.

The rule of reason dictates that "[w]here the preparation of an [Environmental Impact Statement (EIS)] would serve 'no purpose' in light of NEPA's regulatory scheme as a whole, no rule of reason worthy of that title would require an agency to prepare an EIS." *Dept. of Trans. v.*

3 - ORDER

*Public Citizen*, 541 U.S. 752, 767 (2004). USFS argues that because Sirrah had a preexisting property right in the road it was compelled to issue the quitclaim and that under the rule of reason no NEPA analysis was required. Similarly, USFS argues that because of Sirrah's alleged preexisting rights to the road, it had to either issue the quitclaim deed or engage in a taking. However, because there was no preexisting property right, both arguments fail.

Finally, USFS argues that ANILCA is applicable here, and that ANILCA compelled USFS to grant the quitclaim deed. As an initial matter, the court agrees with the interpretation of the relevant portion of ANILCA to apply only to private property "completely surrounded by National Forest System lands." F&R 15; *see* 16 U.S.C. § 3210(a) ("[T]he Secretary shall provide such access to nonfederally owned land within the boundaries of the National Forest System as the Secretary deems adequate to secure to the owner the reasonable use and enjoyment thereof."). While there is no controlling precedent on the interpretation of this language, this court agrees with the F&R that the reasoning in *Bunyard v. United States Department of Agriculture*, 301 F. Supp. 2d 1052 (D. Ariz. 2004), is convincing. In that case, USFS took the position that Friends do now, arguing that ANILCA did not apply to property "bordered on three sides by National Forest Land," *id.* at 1058, and the district court agreed. Even if ANILCA did apply here, USFS action under that statute would still be governed by the requirements of NEPA. *See, e.g.*, *Alpine Lakes Prot. Soc'y v. U.S. Forest Serv.*, 838 F. Supp. 478, 484-85 (W.D. Wash. 1993) ("The court therefore concludes that ANILCA's requirement that the Forest Service grant reasonable access across Forest Service lands to inholders does not preclude compliance with the requirements of NEPA as set forth above.").

### D.    Adjustment of Land Titles Act (ALTA)

USFS objects to the F&R, characterizing it as holding that NEPA analysis is required

4 - ORDER

every time that the Secretary of Agriculture adjusts title to land under the ALTA, 7 U.S.C. § 2253. However, the F&R contains no such holding; NEPA is not triggered by discretionary acts that do not alter the status quo. *See Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768, 784 (9th Cir. 2006). In order to evaluate whether NEPA was implicated, the F&R examined whether the specific action taken by USFS here was discretionary under the ALTA: "Pursuant to this statute, the Secretary is 'authorized' to issue a 'quitclaim deed' in order to correct title 'acquired through mistake, misunderstanding, error, or inadvertence.'" F&R 13. The F&R correctly concluded that "[t]he language used is permissive and does not mandate the Secretary to take such action," and thus that NEPA was potentially implicated. *Id.*

    E.  **Violation of Scenic Area Act**

USFS objects to the holding that it violated the Scenic Area Act. First, USFS argues that there was no need for a new consistency determination when it decided to issue a quitclaim deed instead of a temporary use permit. Second, USFS argues that because it did not have to perform a new consistency determination, the Revised Management Plan (RMP) cumulative effects rules did not apply to the decision to grant an easement. The initial application by Sirrah was for a temporary use permit to allow for logging and transporting "approximately 40 loads of logs." Administrative Record (AR) 372. This was the subject of the original consistency determination. As discussed in the F&R, after that determination was made, "the project changed dramatically from a one-time, temporary use for log hauling (as described in the application for a temporary permit) to permanent use that may often be repeated, ostensibly without further review." F&R 40. These are clearly different uses in potential frequency, scope, and impact. The F&R correctly concluded both that a new consistency determination was necessary, and that due to the timing of the decision, that the new determination should be governed by the RMP.

5 - ORDER

### II.   Friends Objections

Friends objects to the F&R's holding that the duty of the USFS to make a consistency determination under the Scenic Area Act does not constitute a federal action triggering NEPA. Friends relies on *Ramsey v. Kantor*, 96 F.3d 434 (9th Cir. 1996), to support this argument. In *Ramsey*, the court addressed the question of "whether the promulgation of an incidental take statement by a federal agency constitutes major federal action for purposes of NEPA." *Id.* at 437. The incidental take statement was issued by the National Marine Fisheries Service, exercising its authority under the Endangered Species Act (ESA). Under the ESA, a biological assessment is required to determine "the impact of a proposed action upon endangered species." *Id.* at 443 (discussing 16 U.S.C. § 1536(c)(1)). However, a biological assessment does not involve a full analysis of the impact of the proposed action on the environment, and as such, may not "substitute entirely for an [environmental assessment]" as required by NEPA. *Id.* (quoting *Save The Yaak Comm. v. J.R. Block*, 840 F.2d 714, 718 (9th Cir. 1988)). The court held that in the context of the disputed fish management plan, "the incidental take statement . . . is functionally equivalent to a permit because the activity in question would, for all practical purposes, be prohibited but for the incidental take statement." *Id.* at 444. Thus, "the issuance of that statement constitutes major federal action for the purposes of NEPA." *Id.*

Here, Friends argues that the consistency determination under the Scenic Area Act is, like the incidental take statement, a prerequisite to Sirrah's use of the road, and is thus an "action approved by permit or other regulatory decision," 40 C.F.R. § 1508.18(b)(4), subject to NEPA. USFS responds by juxtaposing the specific statutory requirements of the ESA with the more general language of the Scenic Area Act. *Compare* 16 U.S.C. § 1536(o)(2) ("[A]ny taking that is in compliance with the terms and conditions specified in [an incidental take] statement . . . shall

6 - ORDER

not be considered to be a prohibited taking of the species concerned.") *with* 16 U.S.C. § 544l(d) ("Federal agencies having responsibilities within the scenic area shall exercise such responsibilities consistent with the provisions of sections 544 to 544p of this title as determined by the Secretary."). The Scenic Area Act neither "expand[s], restrict[s], or otherwise alter[s]" the duties of the USFS under NEPA, 16 U.S.C. § 544o(f), nor explicitly sets forth the requirement for consistency determinations. Instead, it dictates that a management plan be developed and adopted by the Columbia River Gorge Commission, and concurred in by the Secretary of Agriculture. 16 U.S.C. § 544d. Thus, much of the implementation framework for the Scenic Area Act is contained in the RMP. Here, under the RMP, a consistency determination by USFS is required for the road project to go forward. There is no legally significant difference between this permit and the incidental take statements at issue in *Ramsey*. Thus, contrary to the conclusion reached in the F&R, USFS issuance of a consistency determination here is a "federal action" within the meaning of NEPA.

### III.   Conclusion

For the foregoing reasons, the court adopts in part the Findings and Recommendations [74]. Plaintiff's Motion for Summary Judgment [44] is GRANTED, defendant's Motion for Summary Judgment [56] is DENIED. USFS has violated NEPA and the Scenic Area Act; any implementation of the road reconstruction and use is ENJOINED until USFS complies with the law.

IT IS SO ORDERED.

DATED this <u>11th</u> day of July, 2008, nunc pro tunc March 5, 2008.

/s/  Ancer L. Haggerty
Ancer L. Haggerty
United States District Judge

7 - ORDER